IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

NO. 5:09-CR-302-FL-1

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| vs. ) | |
| ) | MEMORANDUM AND |
| ) | RECOMMENDATION |
| JONATHAN LEIGH SULLIVAN, ) | |
| ) | |
| Defendant. ) | |

This matter is before the court on the government's *Motion for Restraint of Asset Dissipation Under the All Writs Act.* [DE-57]. The motion was referred to this court and is considered here as a recommendation to the district court. *See* 28 U.S.C. § 636(b)(1)(B). The Defendant did not file a response to the government's motion. The court held a hearing on November 5, 2010 to develop the record. Accordingly, this matter is ripe for review. For the reasons stated below, this court recommends that the government's motion be allowed in part and denied in part.

## PROCEDURAL BACKGROUND

Defendant Jonathan Leigh Sullivan ("Defendant") was indicted on eleven counts of manufacturing child pornography in violation of 18 U.S.C. § 2251(a) and (d), and one count of possession of child pornography in violation of 18 U.S.C. § 2252(a)(4)(B). [DE-1]. On June 1, 2010, Defendant entered a plea of not guilty to the charges contained in the indictment, and Defendant's jury trial commenced August 9, 2010. On August 10, 2010, Defendant changed his plea and entered a plea of guilty to all counts contained in the indictment. [DE-50]. Defendant's plea was accepted by the district court and Defendant is currently awaiting sentencing. *Id.* Defendant's sentencing hearing is scheduled to be held no earlier than 90 days from entry of his guilty plea. *Id.*

On September 20, 2010, the government filed a *Motion for Restraint of Asset Dissipation under the All Writs Act*. [DE-57]. The government seeks to restrain Defendant, his agents and assigns from the dissipation or transfer of assets pursuant to the All Writs Act, 28 U.S.C. § 1651, in order to ensure the availability of assets for an anticipated order of restitution in connection with Defendant's sentence. *Id.* at 1. In particular, the government seeks an order prohibiting Defendant and his agents, including his attorney-in-fact Vinson Ray Little ("Little"), and anyone acting on Defendant's behalf, from disposing of assets in which Defendant has an interest or from taking any action which would diminish the value of property in their possession or control. Mem. for Order to Restrain Asset Dissipation and Accounting [DE-58] at 1. The government requests further that Defendant and Little make complete disclosure of Defendant's assets and provide an accounting of all property under their control within the past 2 years, including a description, location and value of each asset. *Id.* at 6 [DE-58]. The government requests that the restraining order be in effect from the date of its entry until the conclusion of Defendant's sentencing hearing. Hr'g Tr. 4:11-17.

At the hearing the government presented the testimony of Agent Mary Catherine Glenn Aldridge of the Immigration and Customs Enforcement ("ICE") and Agent Eric Hicks of the North Carolina State Bureau of Investigation Computer Crimes Unit ("NCSBI"). Defendant was present with counsel at the hearing but presented no testimony. Counsel for the government advised the court that it had made efforts to secure the testimony of Little for the hearing but was not able to locate him.

Subsequently, on November 10, 2010, the government filed an unserved Process Receipt and Return form certifying three unsuccessful attempts to serve Little with a subpoena for the November 5 hearing. Process Receipt and Return [DE-64].

2

## STATEMENT OF THE FACTS

### A. Testimony of Agent Mary Catherine Glenn Aldridge

ICE Agent Aldridge testified that she had a conversation with Teresa Dillard ("Dillard"), the grandmother of the minor victim in this case. Hr'g Tr. 6:4-6. As a result of their conversation, Agent Aldridge, Agent Hicks and an Assistant United States Attorney visited Dillard. Hr'g Tr. 6:7-10. Dillard gave Aldridge two handwritten letters addressed to Dillard from an individual named Ray Little. Hr'g Tr.6:11-13. Aldridge identified the two letters, dated July 5, 2010, and May 21, 2010, as government's exhibits one and two, respectively. Hr'g Tr. 7:21-24, 8:14-23. In the letter of July 5, 2010, Ray Little describes himself as "Ray Little Attorney" and indicates he has the Power of Attorney over Defendant's estate. Gov't Ex. 1; Hr'g Tr. 9:7-9, 17:2-6, 9-11. Little requests that Dillard send him Defendant's drivers license so that Little may cash a check. Gov't Ex. 1; Hr'g Tr. 9:9-11. The letter states further that Defendant had instructed Little to pay Defendant's debts and that Defendant wanted Little to send Dillard $3,000. Hr'g Tr. 17:18-25, 18:1-2. Aldridge subsequently traveled to Williamston, North Carolina in an attempt to locate Little. Hr'g Tr. 10:4-7.[1] Aldridge ultimately found Little in the Martin County Courthouse in the process of filing the Power of Attorney ("POA") in the Register of Deeds office. Hr'g Tr. 10:9-13; 17:12-16. Aldridge identified government exhibit three as the POA Little filed in the Martin County Register of Deeds. Hr'g Tr. 11:1-4, 17:12-17. Over the objection of counsel[2], Aldridge testified further that she spoke to Little, advising him to stop attempting to cash the check, in response to which Little stated he

---

[1] The letter, dated July 5, 2010, includes an address for Ray Little in Williamston, North Carolina, the county seat of Martin County. Gov't Ex.1.

[2] Defense counsel objected to the testimony regarding statements made by Little on the grounds of hearsay. The court allowed this testimony but reserved ruling as to its admissibility.

3

would do so. Hr'g Tr. 11:23-25, 12:1-2.

## B. Testimony of Agent Eric Hicks

NCSBI Agent Eric Hicks testified that he accompanied Agent Aldridge to speak to Dillard in relation to the two letters Dillard had received. Hr'g Tr. 19:8-17. As a result of that meeting, Agent Hicks traveled to Martin County in an attempt to locate Mr. Little and to learn Little's involvement with Defendant. Hr'g Tr. 19:21-25. On July 21, 2010, Agent Hicks interviewed Little at the Martin County Probation office. Hr'g Tr. 20:5-6, 26:13-16. At the commencement of the interview, Agent Hicks advised Little that he was not under arrest and that Little had no obligation to speak to him, to which Little responded he would willingly speak to Agent Hicks. Hr'g Tr. 26:23-25, 27:1-2. During the interview, Little indicated he had met Defendant while the two were incarcerated at the Wake County Jail in December 2009. Hr'g Tr. 23:22-23. Agent Hicks did not independently verify that Little was in fact incarcerated in the Wake County Jail at that time, and admits that Little could have met Defendant some other way. Hr'g Tr. 29:11-25, 30:1-9. According to Agent Hicks, Little and Defendant agreed that Little would act as Defendant's attorney-in-fact to pay Defendant's bills. Hr'g Tr. 24:15.

Agent Hicks testified further that Little admitted writing the letters to Dillard and admitted lying to her about being an attorney. Hr'g Tr. 28:4-8, 34:6-10, 35:15-18. According to Agent Hicks, Little said that he sent the letters to Dillard because Little needed Defendant's drivers license to cash a check in the amount of $26,690.00 that was payable to Defendant. Hr'g Tr.20:15-20, 21:9-11, 38:10-15. During the interview, Little showed Agent Hicks a copy of a voided check made payable to Defendant in the amount of $26,690.19 issued by TIAA-CREF. Agent Hicks received the original

4

Case 5:09-cr-00302-FL   Document 65   Filed 11/17/10   Page 4 of 14

check from Chief Deputy Manning of the Martin County Sheriff's Department.[3] Hr'g Tr. 22:9-10, 23:1-4. According to Agent Hicks, Manning had received the check from Little's attorney to whom Little had given the check in an attempt to cash through an escrow account. Hr'g Tr. 23:9-17; 31:24-25; 32:1-4. Little told Agent Hicks that if he had been able to cash the checks he would have given some money to Dillard but would not say whether he would keep some for himself. Hr'g Tr. 28:16-21, 33:10-15. Agent Hicks advised Little to cease attempts to access Defendant's assets so that assets would be available for any award to be given to the victim. Hr'g Tr. 27:3-12. Agent Hicks has had no further contact with Little, nor has he been contacted by Dillard or any financial institution regarding anyone trying to access Defendant's assets. Hr'g Tr. 27:16-25.

Little told Agent Hicks further that in July 2010, he had contacted Defendant while Defendant was in pretrial detention in the Pitt County Jail in an attempt to obtain Defendant's signature on the POA. Hr'g Tr. 25:10-13. Little stated further that he did not meet with Defendant but that he provided the POA to a guard who then provided it to Defendant who signed it. Hr'g Tr. 25:14-25, 26:8-12. The POA was notarized outside Defendant's presence on July 23, 2010, two days after Little said he visited the jail. Hr'g Tr. 25:14-25, 26:8-12, 32:10-14, 33:2-4.

## C. Availability of Ray Little

Counsel for the government stated that the government had made efforts to serve Little with process for the purpose of producing him as a witness at the hearing. Hr'g Tr. 12:21. The United States Marshal was working in conjunction with Little's state probation officer to coordinate service of process on Little. Hr'g Tr. 39:11-14. According to the government, the probation officer knocked

---

[3] Little did not deny having the original check at one time. Hr'g Tr.23:18-21. Agent Hicks identified Little's voided copy and the original check, marked as government's exhibit four, as the same check. Hr'g Tr. 21:18-25, 22:1-13.

5

on the door at Little's residence but was unable to locate him. The probation officer left a written notice directing Little to appear at the probation office but Little failed to appear. Hr'g Tr. 39:15-21. The Process Return and Receipt filed on November 10, 2010 indicates attempts on three separate occasions to serve Little with a subpoena to appear at the November 5th hearing. [DE-64]. Counsel stated further that outstanding state court arrest warrants exist which have gone unserved on Little. Hr'g Tr. 12:22-25, 13:1. A notation on the Process Return and Receipt states that a warrant has been issued for Little and he "will most likely not appear on 11/5/10." Process Receipt and Return [DE-64].

## DISCUSSION

**A.   The testimony of statements made by Ray Little are admissible.**

The government contends that Defendant is attempting to dissipate assets with the effect of defrauding the United States through the actions of Ray Little. In support of this position, the government relies on testimony from Agents Hicks and Aldridge concerning their conversations with Little on July 21, 2010, at the Martin County Probation Office regarding Little's alleged attempt to cash a check payable to Defendant in the amount of $26,690.19, and his recordation of a general POA with the Martin County Register of Deeds wherein Defendant purportedly identified Little as Defendant's attorney-in-fact. Hr'g Tr. 24:14-16, 26:13-22. After observing the testimony of Agents Hicks and Aldridge at the hearing and assessing their demeanor on the witness stand under direct and cross examinations, the court finds their testimony to be credible and consistent. *See United States v. Stevenson*, 396 F.3d 538, 542-43 (4th Cir. 2005) (noting that assessing the credibility of witnesses is the province of the district court).

Conceding that Little's statements are hearsay, the government contended that the "statement

6

against interest" (FED. R. EVID. 804(b)(3)) exception to the hearsay rule applied to permit the admission of Little's statements through the testimony of Agent Hicks.[4] Hr'g Tr. 12:10-16. To come within the purview of Rule 804(b)(3), the declarant must be "unavailable" and the statement must tend to "subject the declarant to civil or criminal liability . . . that a reasonable person in the declarant's position would not have made the statement unless believing it to be true."[5] A witness is "unavailable" if "absent from the hearing and the proponent of a statement has been unable to procure the declarant's attendance . . . by process or other reasonable means." FED. R. EVID. 804(a)(5). To establish "unavailability," it must be shown that reasonable, good-faith efforts to locate the witness were made. *United States v. Thomas*, 705 F.2d 709, 712 (4th Cir. 1983); *see e.g., United States v. Solomon*, 24 Fed. Appx. 148, 150 (4th Cir. 2001) (concluding the government's attempts to locate witness were reasonable where the government summoned declarant to appear at trial and required by subpoena her attendance at each day of the trial and represented to district court that it had advised declarant to return to court on a specific day); *United States v. Spurlock*, No. 96-4739, 121 F.3d 701 (table), 1997 U.S. App. LEXIS 23530, at *7, 1997 WL 545660, at *3 (4th Cir. Sept. 5, 1997) (finding the government took reasonable steps to locate declarant when it requested the U.S. Marshal search for declarant upon declarant's failure to testify contrary to plea

---

[4] The government also contended Little's statements were admissible because the "[h]earsay is inherently or is reliable." Hr'g Tr. 12:17-20. The court assumes the government meant that Little's statements should be admitted under Federal Rule of Evidence 807, referred to as the residual exception to the hearsay rules. Given the court's finding that Little's statements are admissible as statements against interest, it need not decide the applicability of Rule 807 to the instant matter.

[5] Where the statement is offered to exculpate the accused, corroborating circumstances must indicate the trustworthiness of the statement. *United States v. Guerrero-Damian*, 241 Fed. Appx. 171, 174 (4th Cir. 2007) (citing FED. R. EVID. 804(b)(3)). Here, Little's statements are not offered to exculpate Defendant.

agreement and declarant's assurances one week prior to trial).

On the issue of unavailability, the government contends that immediately upon receiving notice of the hearing set for November 5, 2010, it issued a form requesting service of process by the U.S. Marshal and that it assisted the Marshal in contacting Little's state probation officer so as to ascertain Little's location. Service of process was made to the same address as that identified by Little in his letters to Dillard. *See* Process Receipt and Return [DE-64]; *see also* Gov't Ex. 1. The U.S. Marshal, however, was unable to locate Little. *Id.* The court is satisfied that the government made a thorough and good-faith effort to procure Little's attendance at the hearing by all reasonable means.

Little's statements to Agent Hicks are adverse because of the potential for criminal liability and in particular, attempting to cash a check through fraudulent means. Little acknowledged that in seeking Defendant's driver's license, he advised Dillard of both his purported status as Defendant's attorney and his "power of attorney over [Defendant's] estate" in June 2010 while admitting that a POA executed by Defendant purportedly appointing Little as Defendant's attorney-in-fact did not exist until July 2010. Since Little's statement could subject Little to criminal liability, the court admits the statement concerning the letters into evidence pursuant to Rule 804(b)(3).

## B. Defendant should be temporarily restrained from disposing of assets.

The government seeks an order from the court pursuant to the All Writs Act restraining Defendant from disposing of assets until he is sentenced by the court in this criminal case. The All Writs Act provides the court with a "legislatively approved source of procedural instruments designed to achieve the rational ends of law." *United States v. New York Tel. Co.*, 434 U.S. 159, 172 (1977) (citing *Harris v. Nelson*, 394 U.S. 286, 299 (1969) (internal quotations and subsequent

citation omitted)). Unless Congress has directed otherwise, "a federal court may avail itself of all auxiliary writs as aids in the performance of its duties, when the use of such historic aids is calculated in its sound judgment to achieve the ends of justice entrusted to it." *Id.* at 172-73 (quoting *Adams v. United Sates ex rel. McCann*, 317 U.S. 269, 273 (1942)). Federal courts are authorized under the All Writs Act to "issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law." 28 U.S.C. § 1651(a). A district court's power in this regard includes the power to enjoin or bind non-parties. *New York Tel. Co.*, 434 U.S. at 174; *United States v. Abdelhadi*, 327 F. Supp. 2d 587, 599 (E.D. Va. 2004).

While there is no controlling Fourth Circuit authority, district courts within this circuit have issued post-conviction orders pursuant to the All Writs Act restraining a defendant's ability to dispose of assets in order to ensure the satisfaction of an order to pay restitution or fines. *See e.g., United States v. Runnells*, 335 F. Supp. 2d 724, 725-26 (E.D. Va. 2004) (issuing an order restraining defendants and their agents from diverting funds to avoid paying restitution); *Abdelhadi*, 327 F. Supp. 2d at 598-99 (issuing a restraining order to ensure the future availability of assets to satisfy restitution)[6]; *see also United States v. Gates*, 777 F. Supp. 1294, 1295-96 (E.D. Va. 1991). In *Gates*, though not citing to the All-Writs Act, following defendant's conviction but prior to sentencing, the district court ordered defendant not to dispose of assets. The district court concluded that because

---

[6] The district court in *Abdelhadi* applied a two-part test in determining whether to enter a restraining order under the All Writs Act. *See Abdelhadi*, 327 F. Supp. 2d at 599 (the court may enter a restraining order if (1) by doing so the court will give effect to a previously issued order and (2) there is reason to believe that the restraining order is necessary for payment of a fine or restitution). Subsequent caselaw however has not clearly articulated this test. *See United States v. Simmons*, No. 07-CR-30, 2008 U.S. Dist. LEXIS 12667, at *2, 2008 WL 336824, at *1 (E.D. Wis. Feb. 5, 2008) (restraining order issued in absence of previously-issued court order); *Runnells*, 335 F. Supp. 2d at 725-26.

restitution was certain, "the court was merely assuring that assets available at the time of conviction would remain so until sentencing, so that the court could properly assess costs and fines under the sentencing guidelines and applicable statutes...." *Id.* at 1295. Indeed, in *Gates* the court observed that

> [i]f a trial court does not have authority to order a defendant, post-conviction but prior to sentencing, not to dispose of his assets, then the court is without any meaningful ability to impose a proper sentence under the guidelines and to fulfill the intent and mandate of Congress that a financially able defendant pay fines and costs of prosecution, incarceration, and supervised release or probation.

*Id.* at 1296 n.7.

District courts outside this circuit have reached similar conclusions. *See Simmons*, 2008 U.S. Dist. LEXIS 12667, at *2, 2008 WL 336824, at *1 (E.D. Wis. Feb. 5, 2008); *United States v. Numisgroup Int'l Corp.*, 169 F. Supp. 2d 133 (E.D.N.Y. 2001); *United States v. Ross*, No. 92-CR-1001, 1993 U.S. Dist. LEXIS 14519, at *2, 1993 WL 427415, at *1 (S.D.N.Y. Oct. 15, 1993). In *Simmons*, prior to sentencing, the district court entered an order freezing defendant's bank account pursuant to the All-Writs Act where defendant had been convicted of armed robbery and restitution was mandatory. *Simmons*, 2008 U.S. Dist. LEXIS 12667, at *2, 2008 WL 336824, at *1 (citing *Runnells, Abdelhadi* and *Gates*). The *Simmons* court had not issued a previous order and the restraining order was therefore not giving effect to any previously issued court order; rather, the court focused on the government's showing that the defendant had over $24,000 in a bank account and that defendant sent a third party to attempt to withdraw the funds. *Id.* In *Numisgroup*, the district court denied defendant's motion to vacate a post-conviction/pre-sentence order restraining defendant's coin collection valued at $430,000 where "sentencing and a substantial Order of restitution is imminent" and defendant had virtually no other assets. *Numisgroup Int'l Corp.*, 169 F. Supp. 2d at

137-39. In *Ross*, the district court denied defendant's motion to vacate an order restraining defendant's assets prior to sentencing on the ground that the All-Writs Act empowered the court to enter the order "in aid of its ultimate authority to order restitution." *Ross*, 1993 U.S. Dist. LEXIS 14519, at *1, 993 WL 427415, at *1. The district court in *Ross* opined that "[t]here is no logic to the position that the [c]ourt is powerless to enter a restraining order" after defendant's conviction prior to the sentencing hearing or the preparation of a sentencing report. *Ross*, 1993 U.S. Dist. LEXIS 14519, at *3, 993 WL 427415, at *1.

In the present case, Defendant has pleaded guilty to the manufacturing child pornography and possession of child pornography. There is a minor victim in this case. Although the court has yet to sentence Defendant, it appears likely that as part of his sentence Defendant will be required to provide restitution. *See* 18 U.S.C. § 2259 (indicating that restitution is mandatory in crimes involving offenses under Chapter 110 Sexual Exploitation and Other Abuse of Children); *see United States v. Johnston*, 707 F. Supp. 2d 616, 618 (E.D.N.C. 2010) ("Section 2259(b) provides for the mandatory restitution of the 'full amount of the victim's losses.'").

Defendant and Little reached an agreement whereby Little would assist Defendant in disposing of his assets. In the furtherance of this agreement, Little obtained and filed a POA for Defendant authorizing Little to manage Defendant's finances. Little visited Defendant and obtained the POA while Defendant was in pre-trial detention related to the criminal charges in this case. Little contacted the victim's relative representing himself as Defendant's attorney and representative in an attempt to cash a check in Little's possession but payable to Defendant. Little planned to keep a portion of the funds for himself. The government requests these funds and others owned by Defendant to be available to satisfy the restitution order in this case. The court finds the government

11

has provided sufficient evidence of Defendant's attempt to dissipate assets and that a restraining order is warranted under these circumstances. *See Simmons*, 2008 U.S. Dist. LEXIS 12667, at *2, 2008 WL 336824, at *1.

In addition to an order to restrain Defendant from disposing of assets, the government seeks an accounting of Defendant's assets over a two year period. The two year period includes a period of time preceding Defendant's conviction and unrelated to the charges against Defendant. Furthermore, as conceded by the government, Defendant will likely provide an accounting of assets to the federal probation office in the preparation of a presentence report, if he has not done so already. Hr'g Tr. 42:3-22. The accounting requested by the government would therefore appear to duplicate efforts which are already underway or will begin in the very near future. This court does not find the requested accounting warranted under these circumstances.

## CONCLUSION

For the reasons set forth above, this court RECOMMENDS the government's motion be ALLOWED IN PART and DENIED IN PART.

In particular, this court RECOMMENDS that the following restraining order be entered:
**IT IS HEREBY ORDERED THAT THE DEFENDANT, Jonathan Leigh Sullivan, his representatives, nominees, attorneys, agents, family members, and assigns, which include, but are not limited to, his attorney in fact, Vinson Ray Little, be and are hereby RESTRAINED from selling, transferring, assigning, pledging, distributing, giving away, encumbering or otherwise participating in the disposal of (by transfer of stock or otherwise) or removal from the jurisdiction of this court, or removal from any checking, savings, or any other account, all or part of Jonathan Leigh Sullivan's interest, direct or indirect, in all property, real or**

personal, of Jonathan Leigh Sullivan, without prior approval of the court upon notice to the United States and an opportunity for the United States to be heard. The United States is hereby authorized to record a notice of *lis pendens* on any real property owned by Jonathan Leigh Sullivan, or in which he has a legal or equitable interest, or which is controlled by Jonathan Leigh Sullivan, or to file any other documents to ensure the property is preserved for restitution.

The property subject to this Order includes, but is not limited to, Jonathan Leigh Sullivan's legal or equitable interest, whether joint or exclusive, in any BANK ACCOUNT, REAL PROPERTY, CURRENCY, PERSONAL PROPERTY, BUSINESS ENTITY or FINANCIAL INSTRUMENT and any property transferred by Jonathan Leigh Sullivan to anyone on his behalf.

IT IS HEREBY ORDERED that the accounts and other property of the Jonathan Leigh Sullivan maintained at United States financial institutions be and the same are "frozen." The United States financial institutions are directed to prevent the transfer of funds out of any account, and are otherwise enjoined from transferring (by wire or otherwise), conveying or disposing of all monies or other property currently within any accounts or safe deposit boxes relating to Jonathan Leigh Sullivan. In ordering the financial institutions to "freeze" all of the accounts, it is the intention of the Court that the financial institutions shall not honor any demands by the correspondent banks to release any money nor shall the financial institutions honor any checks or other negotiable instruments drawn on the accounts of the specific banks, if to do so would reduce the balance of the account below the "amount frozen."

It is DIRECTED that all United States financial institutions which maintain accounts

13

identified herein shall immediately inform the government agents, who serve the certified copies of this Order, of the account balances on the date of service. The respective financial institutions are further DIRECTED to continue to receive and credit monies to the accounts of Jonathan Leigh Sullivan.

The Court also DIRECTS that the United States serve a certified copy of this Order on the affected financial institutions.

The United States is authorized and directed to serve a copy of this Order on Jonathan Leigh Sullivan and/or his counsel, and any other entity or individual that the government believes may be in control or possession of property of the Jonathan Leigh Sullivan.

This Order shall remain in full force and effect until Jonathan Leigh Sullivan is sentenced by the court in the matter of *United States v. Jonathan Leigh Sullivan*, No. 5:09-CR-302-FL-1.

The Clerk shall send copies of this Memorandum and Recommendation to counsel for the respective parties, who have fourteen (14) days upon receipt to file written objections. Failure to file timely written objections shall bar an aggrieved party from receiving a de novo review by the District Court on an issue covered in the Memorandum and Recommendation and, except upon grounds of plain error, from attacking on appeal the proposed factual findings and legal conclusions not objected to, and accepted by, the District Court.

So ordered, this the 16th day of November, 2010.

*[signature]*
Robert B. Jones, Jr.
United States Magistrate Judge